**Jon M. Egan**, OSB 002467
Jegan@eganlegalteam.com
Jon M. Egan, PC
547 Fifth Street
Lake Oswego, OR 97034-3009
Telephone:  (503) 697-3427
Fax: (866) 311-5629
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **JOSEPH BRINKMANN**, both in his individual capacity and, in addition, as a collective action on behalf of others similarly situated,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　　　vs.<br><br>**ABM ONSITE SERVICES - WEST, INC.**, a Delaware corporation,<br><br>　　　　　　　　　　　Defendant. | Case Nos. 3:17-cv-00275-SI (Lead)<br>　　　　　　3:17-cv-00478-SI (Consolidated Case)<br><br>**Joint Motion for Final<br>Class and Collective Settlement Approval** |

Counsel for the parties have conferred regarding the subject of this motion and have

agreed to jointly submit this motion.

## MOTION

The parties to this action jointly move for an Order finally approving the settlement

agreement as fair, reasonable, and adequate. This motion is supported by the

Declarations of Jon M. Egan, David Hosenpud, and Robert Coomes submitted herewith,

as well as the Declarations of defense counsel David Hosenpud [Dkt. 63] and Les

Chappell [Dkts. Dkts. 64, 68, and 75] previously submitted. Plaintiff and his counsel

also submit contemporaneously herewith their motion for the award of attorney fees,

costs, and service payment.

## MEMORANDUM

This memorandum will list the standards for final class settlement approval and then

discuss the application to this case.

## STANDARDS

Under Rule 23(e) of the Federal Rules of Civil Procedure, "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Thus, to approve a class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(3); *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).

The settlement must be considered as a whole, and although there are "strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure it is 'fair, adequate, and free from collusion.' " *Lane*, 696 F.3d at 818–19 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). There are a number of factors guiding this review, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Id*. at 819. Courts within the Ninth Circuit "put a good deal of stock in the product of an arms-length [*sic*], non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Class action settlements involve "unique due process concerns for absent class members who are bound by the court's judgments." *Radcliffe v. Experian Info.*

*Solutions Inc.*, 715 F.3d 1157, 1168 (9ᵗʰ Cir. 2013) (quotation marks and citation omitted). When the parties negotiate the settlement agreement before formal class certification, as in this case, the court should engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *Id.* (quotation marks and citation omitted). This more "exacting review" is warranted "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane*, 696 F.3d at 819.

The Ninth Circuit has recognized, however, that "[j]udicial review also takes place in the shadow of the reality that rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9ᵗʰ Cir. 2003). Thus, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9ᵗʰ Cir. 2019) (en banc). (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9ᵗʰ Cir. 2015)).

## DISCUSSION

### A.  Notice to the Class

The Court originally granted preliminary approval to the parties' proposed notice procedure, after the parties made certain amendments to the notice requested by the Court. *See* Dkt. 60. The settlement administrator carried out that procedure. Dkt. 64. However, an incorrect date was inadvertently inserted into the notice, such that the class was told that their deadline to object was the same date as the deadline to opt out, opt in, and make claims. Dkt. 70. As a result, the class was told that their deadline to

object was before plaintiff's motion for approval of attorney fees and service award had been filed. *Id.* This process did not comport with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010).

With the Court's approval, the parties then disseminated a supplemental notice, via both email, text message, and mail, in addition to reminder notices halfway through the notice period. Coomes Dec. at ¶¶ 5–30.

Between these two notice periods, notice of the settlement was given to the settlement class by the best means practicable under the circumstances, including mailing the Notice to Class Members, and posting the Notice, Proof of Claim, settlement, and Preliminary Approval Order on a dedicated website.

Each Notice provided Class Members with all required information including, among other things: (1) a summary of the Action and the claims asserted; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the settlement; (4) the fact that no affirmative action was needed to receive the benefit of class membership, but notice that Class Members could opt out of the Settlement Class, as well as notice of the claim/opt-in procedure for FLSA participation; (5) an explanation of Class Members' opt-out and claim/opt-in rights, the date by which Class Members must opt out or submit claims/opt-ins, and information about how to do so; (6) explaining the release of claims should Class Members choose to remain in the Settlement Class and/or make a claim/opt-in; (7) instructions about how to object to the settlement and the deadline for Class Members to submit any objections; (8) instructions about how to object to the requested attorney's fees, expenses, and service awards and the deadline for Class Members to submit any objections; (9) the date, time, and location of the final approval hearing; (10) the internet address for the settlement website and the telephone

number from which Class Members could obtain more information on the settlement; (11) contact information for the settlement administrator and the Court; and (12) information about how Lead Counsel and the Class Representative would be compensated. The notices were therefore sufficient. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (reaffirming that a class notice need only "generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard" (alteration in original) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)).

## B. Final Certification of Rule 23 class

To certify a settlement class, the requirements of Rule 23 of the Federal Rules of Civil Procedure must be satisfied. *See Hanlon*, 150 F.3d at 1019. Under Rule 23, the plaintiff "must be prepared to prove" that each of the requirements of the Rule is satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23 sets forth more than a "mere pleading standard." *Id.* On the other hand, Rule 23 provides district courts with broader discretion to certify a class than to deny certification. *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013).

A party seeking class certification must satisfy each of the requirements of Rule 23(a) and at least one requirement of Rule 23(b). *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). Under Rule 23(a), a district court may certify a class only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In other words, a proposed class must meet the requirements of

**Joint Motion for Final Class/Collective Settlement Approval**          Page 5

numerosity, commonality, typicality, and adequacy of representation. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012). Rule 23 also requires, implicitly, that the members of the proposed class be ascertainable based on objective criteria. *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1064 (D. Or. 2014). Along with the five requirements of Rule 23(a), the party seeking to maintain a class action also must "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

The Rule 23 analysis is "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351 (quotation marks omitted); *Comcast Corp.*, 569 U.S. at 33-34. This "rigorous" review applies even when certification is for settlement purposes only. *See, e.g., In re Hyundai*, 926 F.3d at 556. Still, Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* A district court, however, "*must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (emphasis in original).

The parties agreed to certification of the class for settlement purposes, and the Court previously agreed that the class met the requisite factors in conditionally certifying the class for settlement purposes in the preliminary approval of the settlement. The Court, however, must now conduct a "rigorous" analysis of the factors.

## 1. Rule 23(a)

The requirements of FRCP 23(a) are met.

## a)    Numerosity

In this district, there is a "rough rule of thumb" that 40 class members is sufficient to meet the numerosity requirement. *Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 590 (D. Or. 2013); *see also Wilcox Dev. Co. v. First Interstate Bank of Or., N.A.*, 97 F.R.D. 440, 443 (D. Or. 1983) (same); 1 *McLaughlin on Class Actions* § 4:5 (15th ed.) ("The rule of thumb adopted by most courts is that proposed classes in excess of 40 generally satisfy the numerosity requirement."). The claims administrator sent 1,555 Notice packets to potential Class Members, as identified through defendant's employment records. This shows that the numerosity requirement is met.

## b)    Commonality

To satisfy the commonality requirement, plaintiffs must show that the class members suffered the "same injury"—that their claims depend upon a "common contention." *Wal-Mart*, 564 U.S. at 350 (quotation marks omitted). "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Class members, however, need not have *every* issue in common: commonality requires only "a single significant question of law or fact" in common. *Mazza*, 666 F.3d at 589; *see also Wal-Mart*, 564 U.S. at 359. The Class Members have the significant issues of law and fact in common, including:

1. Whether deduction of Oregon Workers' Benefit Fund assessments for paid but non-worked hours (*e.g.*, holiday, sick, and vacation hours) violates Oregon law in one or more of the particulars alleged;

2. Whether the Class Members' overtime claims are viable given the parties' competing interpretations of certain overtime statutes and regulations;

3. Whether the time for which Class Members were not compensated was for *de minimis* work;

**Joint Motion for Final Class/Collective Settlement Approval**          Page 7

4. Whether ABM has other legally viable defenses to the application of wage and hour laws; and

5. Whether ABM's actions were willful.

Thus, the commonality requirement is satisfied.

### c)    Typicality

To meet the typicality requirement, plaintiffs must show that the named parties' claims or defenses are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Under the "permissive standards" of Rule 23(a)(3), the "representative's claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). To determine whether claims and defenses are typical, courts look to "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quotation marks omitted); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). The lead plaintiff's claims are based on the same conduct as the claims of the Settlement Class, and all Class Members have the same or similar injury. Thus, lead plaintiff presents claims that are typical of the claims held by each Class Member.

### d)    Adequacy

Rule 23(a)(4) states that before a class can be certified, a court must find that "the representative parties will fairly and adequately protect the interests of the class." This requirement turns on two questions: (1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members"; and (2) whether "the named

plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class."

*Hanlon*, 150 F.3d at 1020. The adequacy requirement is based on principles of

constitutional due process; accordingly, a court cannot bind absent class members if

class representation is inadequate. *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940);

*Hanlon*, 150 F.3d at 1020.

    Lead plaintiff has shown that he understands and accepts his responsibility as a

Class Representative. Lead plaintiff has not demonstrated interests that are adverse to

the Class Members. There is no conflict of interest in this action, and there is no

disagreement between plaintiff's interests and those of the Class Members. Additionally,

Class Counsel and lead plaintiff have vigorously prosecuted this action for more than

three years.

**e)     Ascertainability**

    Ascertainability, although "not expressly required" by Rule 23, is a threshold

requirement for class certification. *Ott*, 65 F. Supp. 3d at 1064. A proposed class must be

"precise, objective, [and] presently ascertainable." *See Williams v. Oberon Media, Inc.*,

468 F. App'x 768, 770 (9th Cir. 2012) (alteration added) (quotation marks omitted).

Class members must be identifiable through "a manageable process that does not

require much, if any, individual factual inquiry." *Lilly v. Jamba Juice Co.*, 308 F.R.D.

231, 237 (N.D. Cal. 2014) (quoting William B. Rubenstein, 1 *Newberg on Class Actions*

§ 3:3 (5th ed.)). This requirement does not entail, however, that "*every* potential member

... be identified at the commencement of the action." *Id.* (quotation marks omitted)

(emphasis added). The Class Members here were identifiable from defendant's

employment records, and thus this requirement is met.

## 2. Rule 23(b)(3)

Rule 23(b)(3) requires a court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This analysis, in accord with Rule 23's "principal purpose" of "promot[ing] efficiency and economy of litigation," inquires into "the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 963–64 (9th Cir. 2013) (quotation marks omitted). The focus of this inquiry, however, is on "*questions* common to the class"—plaintiff need not, at this threshold, "prove that the predominating question[s] will be answered in their favor." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459, 468 (2013) (emphasis in original).

The only individualized issues in this case are those of damages, which do not defeat certification. The common issues predominate here.

Regarding superiority, the purpose of Rule 23(b)(3) is "to allow integration of numerous small individual claims into a single powerful unit." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 722 (9th Cir. 2010). Here, the administrator sent 1,555 Notice packets, showing that there are over a thousand class members who have low-value claims. Although they may be entitled to attorney's fees and costs if they prevail in an individual lawsuit, the individual claims likely are too small to justify the cost and effort of private counsel to file and prosecute individual actions. Allowing this action to proceed as a class action is the superior method of adjudicating the controversy given the number of class members and amount of damages at issue for each class member. *In*

*re Hot Topic, Inc. Sec. Litig*., 2014 WL 12462472, at *6 (C.D. Cal. Nov. 3, 2014).

## C. Settlement Agreement

The Court considers the factors enumerated by the Ninth Circuit as relevant in evaluating whether a settlement agreement is fair, reasonable, and adequate.

### 1. Strength of Plaintiff's case and the risk, expense, complexity, and likely duration of further litigation and maintaining class action status through trial

While the Court granted in part and denied in part both parties' cross-motions for summary judgment, several aspects of plaintiff's claims and defendant's defenses remain open questions of fact or law. Although plaintiff is confident of the strength of his case, he acknowledges that there are non-frivolous potential defenses to his claims.

The central consideration for this factor is usually the expense of litigation. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.*

The parties agree that if this case had not settled, they would have had to engage in significant additional discovery and to file motions for conditional certification of the FLSA Class, certification of the Rule 23 Class, likely cross-motions on summary judgment, and defendant's presumptive motions to decertify the FLSA and Rule 23 classes. These litigation steps would have been expensive, complex, and protracted. The settlement avoids these expenditures of resources for all parties and the Court and provides Settlement Class Members with "certain and prompt relief," a "significant benefit that [they] would not receive if the case proceeded." *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013). That is all the more true in today's uncertain climate related to COVID-19 and its ongoing effects on the economy. This factor weights in favor of approval.

**Joint Motion for Final Class/Collective Settlement Approval**     Page 11

## 2. The amount offered in settlement

In considering the potential fairness of the recovery, courts often compare the total amount of recovery in a settlement to the estimated total amount of damages that the plaintiffs could recover if the case was litigated. *See, e.g., In Re Mego Fin. Corp.*, 213 F.3d 454, 459 (9th Cir. 2000). Nonetheless, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982).

The Settlement Agreement provides for a Settlement Fund of $4,111,613.94. This figure represents 100% of the potential damages available to the class and collective according to the facts alleged and plaintiff's counsel's calculations, including prejudgment interest through the date of the parties' mediation. This fund will pay the costs of recovery to Class Members, attorney's fees and costs, and the costs to administer the Settlement, including giving notice to Class Members [1], printing and distributing checks, and printing and distributing 1099s following the tax year of the payments. Per the terms of the settlement agreement, after the initial distribution as described , monies remaining shall be redistributed to the Northwest Workers' Justice Project, a 501(c)(3) nonprofit organization dedicated to education and enforcement of worker rights.

In addition, in response to this litigation, ABM has changed its payroll processes so that Oregon Workers' Benefit Fund assessments will no longer be deducted from employee wages for non-worked hours. This change imparts additional value to the

---

[1] The parties have agreed that the $3,000 cost of the supplemental notice will be borne by plaintiff's counsel and subsumed into any attorney fee award approved by the Court. The class will not have to pay for that supplemental notice process.

**Joint Motion for Final Class/Collective Settlement Approval**          Page 12

class. *See, e.g., Janicijevic v. Classica Cruise Operator, Ltd.*, No. 20-CV-23223, 2021 WL 2012366, at *1 (S.D. Fla. May 20, 2021) ("The Court commends Defendants for voluntarily undertaking policy changes. The Court finds that these policies certainly have an important value to the class that would not have been brought about by individual actions.").

To date, no objections have been raised challenging the sufficiency of the amount offered in settlement. Given the number of class members who submitted claims and opted in to the FLSA portion of the settlement, defendant will pay out a total of $2,823,218.37, which is 69% of the gross settlement fund. Considering the total recovery of the Settlement and the risks of continued litigation, the amount of recovery is fair, adequate, and reasonable.

### 3. The extent of discovery completed and the stage of the proceedings

This factor is concerned with whether "the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp.*, 213 F.3d 454, 459 (9th Cir. 2000). This case was litigated for three years. The parties engaged in significant discovery, including both formal and informal written discovery, exchanging 53,000 pages of time and pay records for over 1,500 employees as well as large amounts of spreadsheet information and multiple rounds of explaining and refining calculations to reach the appropriate damage figures. The parties "carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. Oct. 8, 2014). This factor, therefore, supports approval.

### 4. The experience and views of counsel

" 'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop. v.*

*DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quoting *In re Painewebber Ltd.*

*P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)). "This is because 'parties represented

by competent counsel are better positioned than courts to produce a settlement that

fairly reflects each party's expected outcome in the litigation.' " *Id.* (alteration omitted)

(quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9ᵗʰ Cir. 1995)). Absent fraud or

collusion, courts can, "and should, rely upon the judgment of experienced counsel for

the parties," when assessing a settlement's fairness and reasonableness. *Barbosa v.*

*Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013). Lead counsel is an

experienced litigator. Defendant is also represented by experienced counsel. This factor

supports approval.

## 5. Presence of a Government Participant

The Class Action Fairness Act provides in relevant part:

> Not later than 10 days after a proposed settlement of a class action is
> filed in court, each defendant ... shall serve upon the appropriate
> State official of each State in which a class member resides and the
> appropriate Federal official, a notice of the proposed settlement ....
> * * *
> An order giving final approval of a proposed settlement may not be
> issued earlier than 90 days after the later of the dates on which the
> appropriate Federal official and the appropriate State official are
> served with the notice required under subsection (b).

28 U.S.C. § 1715(b), (d). Defendant provided the notices required under CAFA to the

U.S. Attorney General and the state Attorneys General of Arizona, Arkansas, California,

Colorado, Florida, Idaho, Indiana, Illinois, Michigan, Missouri, Nevada, North Carolina,

Oregon, Pennsylvania, South Carolina, Virginia, Washington, and Wisconsin, all on or

before June 15, 2020. Dkt. 63 at §§ 3–5 and Exhibits 1–3.. That was not later than 10

days after the final proposed settlement was filed on June 5, 2020 [Dkt. 59]. *See also*

the Supplemental Declaration of David Hosenpud submitted herewith  at § 2 and

**Joint Motion for Final Class/Collective Settlement Approval**        Page 14

Exhibit 1, providing additional notices under CAFA within 10 days of the Court's order granting preliminary approval of the revised settlement agreement.  [Dkt. 79]. More than 90 days have elapsed since notices were  sent, and no Attorney General has objected to the proposed  settlement. This factor therefore favors approval of the settlement.

## 6.  Reaction of the Settlement Class

Of the 1,555 class members to whom notice packets were mailed, only 11 opted out, and to date, no one has objected to the settlement. 530 class members submitted complete claims, which is 34% of the class pool. Those 530 class members' claims represent 52.4% of the available claimable funds.  The participation rate and payout percentage, along with the lack of any objections to the settlement, provides a strong presumption that the settlement is fair, reasonable, and adequate. *See, e.g., DIRECTV*, 221 F.R.D. at 529 ("The absence of a single objection to the proposed Settlement provides further support for final approval of the Proposed Settlement."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("By any standard, the lack of objection of the Class Members favors approval of the Settlement."). Thus, this factor weighs in favor of approval.

## 7.  The absence of collusion or other conflicts of interest

Courts considering a class settlement must examine whether the settlement was the "result of good faith, arm's-length negotiations or the result of fraud and collusion." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 258 (N.D. Cal. 2015). The Ninth Circuit has identified three signs of collusion: (1) class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply awarded; (2) the parties negotiate a "clear sailing"

arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by a defendant; or (3) the parties arrange for payments not awarded to revert to a defendant rather than to be added to the class fund. *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011). *See also*, *Briseño v. Henderson*, No. 19-56297, 2021 WL 2197968, *6 (9th Cir. June 1, 2021) (extending *Bluetooth* holding to post–class certification settlements). The Settlement is the product of extensive arm's-length negotiations, with assistance from a respected third-party mediator, Teresa Wakeen, in addition to extensive negotiations afterward. Defendant has continued to dispute the claims against it and the Action was litigated for three years before the parties reached their proposed Settlement.

### a) There is no disproportionate distribution to plaintiff's counsel

To analyze a settlement for disproportionate distribution, consistent with *In re Bluetooth,* the Court compares the payout to the class (both actual and expected) to the unopposed claim of fees by class counsel. S*ee, e.g., Harris v. Vector Mktg. Corp.,* 2011 WL 4831157, *6 (N.D.Cal. Oct. 12, 2011).

### (1)    Fees were proportionate compared to expected payout

Plaintiff's counsel's expected fees in this case are reasonable.

Common-fund attorney fees are awarded as a percentage of the total benefit to the class, not just the amounts actually claimed by the class members. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) ("To claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class. Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel."); *Williams v. MGM-Pathe Commc'ns Co*., 129 F.3d

1026, 1027 (9th Cir. 1997) ("We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar. We thus reverse and remand," citing *Boeing*.). "The Supreme Court has indicated that the parties to a class action properly may negotiate not only the settlement of the action itself, but also the payment of attorneys' fees." *Id.*, citing *Evans v. Jeff D.,* 475 U.S. 717, 734–35, 738 n. 30, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986).

Plaintiff's counsel seeks 25% of the gross settlement fund as an award of attorney fees, costs, and nontaxable expenses. That is the benchmark award in the Ninth Circuit. *Id.* ("[T]he attorneys for a successful class may recover a fee based on the entire common fund created for the class, even if some class members make no claims against the fund so that money remains in it that otherwise would be returned to the defendants. In *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990), we held likewise, and indicated that our benchmark for an attorneys' fee award in a successful class action is twenty-five percent of the entire common fund.").

Thus, the expected fees negotiated as part of the settlement agreement were reasonable.

**(2)    Fees are also proportionate compared to actual payout**

In addition to the expected fees, the actual fees to be distributed to plaintiff's counsel are not disproportionate to the distribution to the class members. Courts analyze this factor by imagining a purported constructive common fund, adding up all of the money that the defendant will actually be paying and comparing it to the requested fee. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 945 (9th Cir. 2011) (identifying purported constructive common fund as $962,000, adding the "$800,000 allotment for

attorneys' fees, the $12,000 allotment for an incentive award, the $100,000 *cy pres* award, and the $50,000 allotment for fees" to reach this figure).

In our case, the purported constructive common fund totals $2,823,218.37, made up of the following figures:

- $316,495.30 guaranteed funds

- $1,418,819.58 claimed funds

- $1,027,903.49 in requested attorney fees and costs

- $10,000.00 incentive payment

- $50,000 settlement administration payment

The requested attorney fees and costs make up 36.41% of this constructive common fund.

Comparing the requested fees/costs directly with the class payout yields similar results. The amount of requested fees/costs is 59% of the amount of the class payout. Put another way, the anticipated payout to the class is 1.7 times more than the requested fees/costs.

These figures are within the range approved by other district courts in this Circuit as non-collusive. *Compare, e.g.*, *Norris v. Mazzola*, No. 15-CV-04962-JSC, 2017 WL 6493091, *9 (N.D. Cal. Dec. 19, 2017) (fee request of $858,751, which was 80% of the class payout of $1,076,255, "does not suggest collusion"); *Shvager v. ViaSat, Inc.*, No. CV-12-10180-MMM-PJWx, 2014 WL 12585790, *13 (C.D. Cal. Mar. 10, 2014) (when requested fees of $150,000 was 70% of $215,000 class award, "the first sign of collusion is not present here"); *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 984 (E.D. Cal. 2012) ("The court estimates that the settlement pool, particularly with the reduction in the fee award to class counsel, will exceed the fee award of $1,160,000. These small

disparities are in sharp contrast to those in recent cases like *Bluetooth*"); and *Harris v. Vector Mktg. Corp.*, No. C-08-5198-EMC, 2012 WL 381202, *5 (N.D. Cal. Feb. 6, 2012) ("fees are now on par with the money to the class and the cy pres combined (roughly 1:1). The Court is not faced with a situation where fees are disproportionate to the class award as in *Bluetooth*."), with *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (noting that "award of attorneys' fees up to eight times the monetary *cy pres* relief afforded the class" was disproportionate, especially given zero monetary relief directly to the class) and *Harris v. Vector Marketing Corp.,* No. C–08–5198, 2011 WL 4831157 (N.D.Cal. Oct. 12, 2011) (disapproving an agreement that awarded class counsel $4 million, while the expected payout to the class was approximately $1 million.).

In addition to the ratio itself, courts have found other facts to support a finding of no collusion with regard to the proportionate distribution element. These include the fact that the requested fee award includes reimbursable out-of-pocket costs (*Keegan v. Am. Honda Motor Co, Inc.*, No. CV-10-09508-MMM-AJWx, 2014 WL 12551213, *18 (C.D. Cal. Jan. 21, 2014)). As noted previously, plaintiff's counsel is not seeking a separate award of costs or expenses in this case and is bearing the entire cost of the supplemental notice process.

For the above reasons, we submit that both the actual and expected distributions to the class and to plaintiff's counsel are proportionate and do not suggest collusion.

**b)      The agreement does contain a clear sailing provision, but no kicker**

The settlement agreement does contain a "clear sailing" provision, in that ABM agreed not to contest plaintiff's counsel's attorney fee petition for up to 25% of the gross settlement value. "As the Ninth Circuit has explained, however, a clear sailing provision

does not signal the possibility of collusion where, as here, Class Counsel's fee will be awarded by the Court from the same common fund as the recovery to the class." *In re High-Tech Employee Antitrust Litigation*, 11-cv-02509-LHK, 2015 WL 5158730, *14 (N.D. Cal. Sep. 2, 2015) (internal quotations omitted) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009)); *see also Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, *7 (N.D. Cal. Apr. 15, 2015) ("because any attorneys' fees award will come out of the common fund, there is no 'clear sailing' agreement here that would warrant against settlement approval"). This factor therefore does not weigh against settlement approval. *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 2909429, *7 (N.D. Cal. May 19, 2016) (so stating).

In the current settlement, any un-awarded fees/costs/incentive payment will be disbursed to the non-opt-in class members in the same proportion as their Guaranteed Funds. [2] This removes the "kicker" provision that would otherwise have returned any un-awarded fees to defendant. [3] "As the Ninth Circuit has noted, moreover, the inference of collusion drawable from a clear sailing provision is reduced when the agreement lacks a reversionary or 'kicker provision'." *In re Toys R Us-Delaware, Inc.-- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014), citing *In re Bluetooth,* 654 F.3d at 949.

**c)    The settlement's reversion of unclaimed funds does not signal collusion**

*In re Bluetooth* did not flag settlement reversions in general as a warning sign of

---

[2] Class members who opted in are receiving more than 100% of their possible jury award, so we view it as more equitable to disburse un-awarded fees/costs/incentive payment to those who did not opt in.
[3] It should be noted that if enough class members had opted in, un-awarded fees would have been disbursed to those class members instead of defendant. *See* Exhibit B to previous settlement agreement [Dkt. 59].

**Joint Motion for Final Class/Collective Settlement Approval**            Page 20

potential collusion. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011). Rather, it identified the reversion of clear-sailing attorney fees to the defendant as the warning sign. *Id*. To be sure, whether or not unclaimed settlement funds revert to the defendant is a consideration in determining the overall fairness of a settlement. But that was the case before *In re Bluetooth*. As a warning sign of potential collusion, the inquiry focuses on the reversion of unawarded attorney fees.

And although some courts have noted difficulties associated with a "kicker" provision, such provisions cut both ways. When attorney fees are paid independently from (*i.e.*, without deduction from and without reversion to) the class's recovery, one could picture a plaintiff's counsel becoming disincentivized to maximize that class recovery. However, other courts have viewed that as a positive, *supporting* settlement approval, because each class member will receive their full recovery regardless of the amount of attorney fees awarded. *See, e.g.*, *Shvager v. ViaSat, Inc.*, No. CV-12-10180-MMM-PJWx, 2014 WL 12585790, *14 (C.D. Cal. Mar. 10, 2014) ("This is not, moreover, a case in which ViaSat has agreed to pay a lump sum that will be apportioned among class members and their attorneys. Rather, the settlement agreement provides that each class member will receive his or her *pro rata* share—approximately $141.99 per person.... The $150,000 negotiated cap on attorneys' fees is separate, and is not deducted from the class recovery. The fact that the settlement does not contemplate a common fund from which both class members and counsel will be paid mitigates, to some extent, the collusive nature of the inherent kicker provision."); *Shames v. Hertz Corp.*, No. 07–CV–2174–MMA (WMC), 2012 WL 5392159, *14 (S.D. Cal. Nov. 5, 2012) ("[T]he attorneys' fees ... are wholly separate from the class settlement—and will have no impact one way or the other on the amount the class recovers—a 'savings' for

**Joint Motion for Final Class/Collective Settlement Approval**          Page 21

Defendants [should the court not grant the full amount of negotiated attorneys' fees] does not implicate the concerns the Ninth Circuit expressed about the 'kicker' provision in the *Bluetooth* settlement"). That is the case in our settlement, which awards at least 100% of the most generous possible jury verdict to all class members making a claim, and more than 100% of all compensatory damages to all class members regardless of whether they make a claim.

In any event, as noted above in the Clear Sailing discussion, in the current settlement any un-awarded fees/costs/incentive payment will be disbursed to the non-opt-in class members in the same proportion as their Guaranteed Funds. This removes the third *In re Bluetooth* factor from the case.

### 8. Application

We have discussed the application of the *In re Bluetooth factors* above. "For all these factors, considerations, subtle signs, and red flags, however, the underlying question remains this: Is the settlement fair? The factors and warning signs identified in *Hanlon*, *Staton*, *In re Bluetooth*, and other cases are useful, but in the end are just guideposts. The relative degree of importance to be attached to any particular factor will depend upon the unique facts and circumstances presented by each individual case. Deciding whether a settlement is fair is ultimately an amalgam of delicate balancing, gross approximations and rough justice, best left to the district judge, who has or can develop a firsthand grasp of the claims, the class, the evidence, and the course of the proceedings—the whole gestalt of the case. Accordingly, the decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018) (internal citations and quotations omitted). *See also*, *In re Toys R Us-Delaware,*

*Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 448 (C.D. Cal. 2014) ("It must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation," citations omitted).

It is also worth noting that even in *In re Bluetooth*, the seminal case establishing the factors of the collusion analysis, the trial court affirmed the settlement on remand despite the presence of all three "red flags" identified on appeal.

With that background, we discuss below several factors that weigh against a finding of collusion.

### a) The notice process was fair and fairly implemented

One of the concerns that courts have expressed when dealing with a reversion is that it incentivizes the defendant to negotiate for a more difficult claims process. The result of the claims process does not support a finding of collusion. In our case, 34.1% (530 of 1555) of the class members filed a claim. That compares favorably with average opt-in rates in similar wage-and-hour class actions. *See, e.g.*, Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 BERKELEY J. EMPL. LAB. LAW 269, 294 (2008) ("The average opt-in rate for the twenty-one cases analyzed in the Table is 15.71%.").

As a result of the claims made to date, ABM will be paying:

- 100% of the potential guaranteed funds ($316,495.30 of a possible $316,495.30, with the funds allocable to the eleven opt-outs going to cy pres)

- 37.4% of the gross total claimable payments ($1,418,819.58 of a possible $3,795,118.64)

- 52.4% of the net [4] total claimable payments ($1,418,819.58 of a possible $2,707,215.16)

- 37.4% of the gross claimable Rule 23 funds ($1,405,569.58 of a possible $3,756,243.64)

- 53% of the net claimable Rule 23 funds ($1,405,569.58 of a possible $2,668,340.16)

- 34.1% of the claimable FLSA funds ($13,250.00 of a possible $38,875.00)

In all, ABM will be paying 69% of the gross settlement ($2,823,218.37 of a possible $4,111,613.94) as a result of the claims made. That does not suggest collusion.

In the first notice period, we used notification by first-class mail, which has been described as the "gold standard" for class notice. *See, e.g.*, *Good v. Am. Water Works Co., Inc.*, No. CV-2:14-01374, 2016 WL 5746347, *7 (S.D.W. Va. Sept. 30, 2016) (so stating). *See also*, MANUAL FOR COMPLEX LITIGATION (FOURTH) at 287 ("When the names and addresses of most class members are known, notice by mail usually is preferred."). We also had the class administrator run the class members' last-known addresses through a national database to update them, did skip traces on returned mail, and achieved a 91.83% delivered rate (with only 127 of the 1555 claim packets not deliverable). *See* Dkt. 64 at ¶¶ 9–15.

In the second notice period, the parties disseminated the supplemental notice via mail, electronic-mail, and text-message notice where the information to provide such notice supplementation was maintained in defendant's HR database in the regular course of business. Between mail, email, and SMS text, the supplemental notice had a

---

[4] These net figures acknowledge the reality that, under the settlement, above a certain amount of claimed funds, class counsel's attorney fees reduce the pool of available claimable funds.

**Joint Motion for Final Class/Collective Settlement Approval**        Page 24

100% deliverable rate.

Thus, any defects in the original notice process have been cured through the
supplemental notice process. *See, e.g.*, *Dickerson v. Cable Commc'ns, Inc.*, No. 3:12-CV-
00012-PK, 2013 WL 6178460, at *4 (D. Or. Nov. 25, 2013) ("The deadline for class
members to object to requested fees must be set after the motion for the fees and
documents supporting the motion have been filed. Allowing class members an
opportunity thoroughly to examine counsel's fee motion, inquire into the bases for
various charges and ensure that they are adequately documented and supported is
essential for the protection of the rights of class members. Here, the original Notice and
filing of the fee motion did not comply with *In re Mercury*. The supplemental notice and
the continuation of the Fairness Hearing, however, cured the defect and provided class
members with the opportunity to review class counsel's fee motion and supporting
documents before the deadline to object." (citations and quotations omitted).).

**b)     The case was fought before it was settled**

The fact that the parties litigated cross–dispositive motions before engaging in
mediation militates against a finding of collusion. *See, e.g.*, *Shames v. Hertz Corp.*, No.
07-CV-2174-MMA-WMC, 2012 WL 5392159, *15 (S.D. Cal. Nov. 5, 2012) ("The
protracted and hard-fought nature of this case further militates against the existence of
collusion. ... [H]ad the parties sought to collude, they would have been much more likely
to reach a collusive settlement as quickly and cheaply as possible to minimize their costs
and attorney time while maximizing their personal recovery."); *Bellinghausen v.
Tractor Supply Co.*, 306 F.R.D. 245, 259 (N.D. Cal. 2015) ("Moreover, the Court finds
no evidence of explicit collusion here, where, after litigating several rounds of motions
to dismiss, the parties engaged in settlement talks overseen by a neutral mediator for

several weeks before agreeing on this settlement.").

**c)    Participation of mediator and course of negotiations**

On October 7, 2019, the parties in this case held a day-long mediation in Seattle with experienced and respected attorney mediator Teresa Wakeen. Declaration of Jon M. Egan submitted herewith at ¶ 4 and Exhibit A. The participation of a mediator, though not dispositive, is "a factor weighing in favor of a finding of non-collusiveness." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir.2011); *see also, Carter v. Anderson Merchandisers, LP*, 2010 WL 1946784, *7 (C.D. Cal. 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive," citations omitted). At the mediation, the parties resolved all aspects of a purported settlement except for attorney fees and the issue of overtime penalty wages. Egan Dec. at ¶ 5.

Additional documents were exchanged following the mediation in order to calculate the amount of any overtime claims. *Id.* at ¶ 6. After analyzing those documents and additional negotiations, on January 3, 2020, the parties agreed in principle on a $4,111,613.94 final gross settlement figure (as well as individual class member calculations) that included the following totals:

a. More-than-full 100% compensatory damages to each class member, constituting $5,495.30 in total wrongful deductions (an average of $3.53 per putative class member), *and* $311,000 in $200 compensatory statutory damage awards under O.R.S. 652.615;

b. Full 100% penalty wages under O.R.S. 652.150 to each claiming class member who was terminated with unpaid deductions owing during the statute of limitations period, totaling $2,084,402.90;

**Joint Motion for Final Class/Collective Settlement Approval**          Page 26

c. Full 100% overtime penalty wages under O.R.S. 653.055 to each claiming class member who had a wrongful deduction during an overtime week the payday for which was during the statute of limitations period, totaling $611,618.56;

d. More-than-full FLSA damages of $25 to each collective member who had a wrongful deduction during an overtime week during the statute of limitations period, totaling $38,875; and

e. Full prejudgment interest through the date of the mediation on all of the above to each claiming class member, totaling $1,060,222.19.

*Id.* at ¶ 6.

Once the final class settlement figure was agreed to, defense counsel inquired about the attorney fees that plaintiff's counsel would be seeking. *Id.* at ¶ 7. Plaintiff's counsel indicated that he would seek a common-fund award in the amount of 25% of the gross settlement value, which defense counsel indicated his client would not oppose. *Id.* This course of negotiations weighs against a finding of collusion. *See, e.g.*, *Shvager v. ViaSat, Inc.*, No. CV-12-10180-MMM-PJWx, 2014 WL 12585790, *15 (C.D. Cal. Mar. 10, 2014) ("Furthermore, the fact that the parties decided on the common fund amount before negotiating the amount of attorneys' fees also supports a conclusion that the settlement was not the result of collusion, but rather the product of good-faith negotiation."); *Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2016 WL 1622881, *8 (N.D. Cal. Apr. 25, 2016) ("In reviewing the negotiations that took place, the Court noted the parties reached terms on the proposed settlement through a series of negotiations between experienced counsel that were conducted at arm's-length and in good faith over the course of 45 days.").

**d)    The class achieved an excellent result**

As discussed above, this case involves a somewhat technical violation of the law—wrongful deductions averaging $3.53 per putative class member and totaling only $5,495.30 across the whole class. Within two months of the filing of the Complaint defendant cured the error that resulted in the alleged wrongful deduction. As a result of this settlement, all class members (whether or not they opted in) will be paid those deducted amounts, *plus* the full $200 in compensatory statutory damages (whereas O.R.S. 652.615 provides for the deducted amount *or* $200). Thus, all class members are more than made whole as a result of the settlement.

In addition to being made whole, the class members were given the option to opt in to the class in order to obtain penalty wages from ABM. Those include 30 days of penalty wages for those who were terminated during the statute of limitations period with wages due and owing, and 30 days of penalty wages for those who worked overtime during the statute of limitations period. For the 91 class members who met both categories, the settlement entitles them to **both penalties** for the same underlying wrongful deductions, a result that they are extremely unlikely to be able to obtain at trial.

Finally, the FLSA collective members who opt in will receive $25 to release their FLSA claims. Given the small amounts of damages at issue, and the fact that the only FLSA damages available would be the same amounts as liquidated damages, $25 far exceeds the actual FLSA damages due to any of the opt-in collective members.

So, all class members (whether or not they opted in) are being paid more than 100% of all possible compensatory damages. In addition, the class members who opt in are receiving at least 100% of the penalty wages they could recover at trial (and 91 of them

**Joint Motion for Final Class/Collective Settlement Approval**            Page 28

would receive much more than that), plus much more than their possible FLSA damages. Courts have held that this kind of result does not support a finding of collusion, reasoning that plaintiff's counsel can't have negotiated away anything to obtain a higher fee award if nothing was negotiated away in the first place. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 612 (9th Cir. 2018) ("Second, from a class member's perspective, the benefits available are quite substantial, worth at least thousands of dollars, and in some cases more, to each class member. Given the amounts at stake, there is little chance class members will forego the benefits because of the effort of lodging a claim.... The incentives for class members to participate in the settlement, the complementary inducement for Volkswagen to encourage them to participate, the value of the claims, and the actual trend in class member participation all indicate that the reversion clause did not, in design or in effect, allow VW to recoup a large fraction of the funding pool."); *Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2016 WL 1622881, *9 (N.D. Cal. Apr. 25, 2016) ("Here, despite the clear sailing provision, the class stands to receive a monetary award greater than it might have received had the case proceeded to trial."); *Salmonson v. Bed Bath & Beyond, Inc.*, No. CV-2011-2293-SVW-SS, 2013 WL 12171817, *8 (C.D. Cal. Mar. 14, 2013) ("Finally, the Court finds that is unlikely that the class could have received a much better benefit than the one bargained for, given the obstacles (detailed above) to the success of the suit, as well as the likely minimal damages available had Plaintiffs' prevailed. The relative success of this settlement in achieving its objectives militates strongly in favor of finding the settlement itself fair, reasonable, and adequate, notwithstanding the concerns the attorneys' fees raise."); *LaGarde v. Support.com, Inc.*, No. C12-0609 JSC, 2013 WL 1283325, *10 (N.D. Cal. Mar. 26, 2013) ("[T]he $10 offered

to each class member fairly and adequately satisfies their claims. That most class members presumably found it not worth their time to file the claim form and receive a $10 check, does not impute collusion to the parties. ... For the same reasons, the Court finds that Plaintiffs did not bargain away benefits to the class that it otherwise would have obtained when they secured the clear sailing provision and allowed the unawarded fees to effectively revert to Defendants. Had Plaintiffs colluded with Defendants to reduce class relief in exchange for higher fees, the settlement would not provide such a substantial value"); *Shames v. Hertz Corp.*, No. 07-CV-2174-MMA-WMC, 2012 WL 5392159, *13 (S.D. Cal. Nov. 5, 2012) ("Further still, there is no evidence that Plaintiffs 'negotiated away' anything to garner a higher fee amount. The cash option represents *at least* a two-thirds recovery of actual estimated damages, and the voucher option represents a recovery many times more than actual damages. Despite certain objectors' assertion that the settlement has no value, the Court has expressly found that the settlement provides substantial value to the class in light of their actual damages. Had class counsel colluded to reduce the class recovery amount in exchange for higher fees, the settlement would not provide such a substantial value to the class," italics in original); *In re Bluetooth Headset Prod. Liab. Litig.*, No. 07-ML-1822-DSF-EX, 2012 WL 6869641, *10 (C.D. Cal. July 31, 2012) ("The Court agrees with the parties that the terms of the settlement are fair to the class: the class members had virtually no hope of ultimately obtaining any monetary relief (and certainly no significant monetary relief) even if this matter had proceeded past class certification, past summary judgment, and through a lengthy and expensive trial. The injunctive relief was quite possibly more than the class could have achieved. ... [T]here are no grounds to reject a settlement that provides a class with more than it would otherwise achieve for the sole purpose of

**Joint Motion for Final Class/Collective Settlement Approval**       Page 30

making a statement to Plaintiffs' counsel that is better made by the legislature.").

## D. Conclusion

For the reasons set forth above, the parties jointly move for an Order finally

approving the settlement agreement as fair, reasonable, and adequate.

Respectfully Submitted by:

                                        JON M. EGAN, PC

                                        *s/ Jon M. Egan*
DATED:  June 28, 2021          By_____
                                          Jon M. Egan, OSB No. 002467
                                          jegan@eganlegalteam.com
                                          Attorney for Plaintiff


                                        LANE POWELL PC

                                        *s/ David G. Hosenpud* by Jon M. Egan via
                                            email permission June 28, 2021
DATED:  June 28, 2021          By_____
                                          David G. Hosenpud, OSB No. 832414
                                          hosenpudd@lanepowell.com
                                          Attorneys for Defendant